**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-2314-REB-BNB

R.M. INVESTMENT CO., d/b/a TRAPPERS LAKE LODGE & RESORT,

    Plaintiff,

v.

UNITED STATES FOREST SERVICE, and
DON G. CARROLL, in his official capacity as White River National Forest Supervisor,

    Defendants.

## ORDER SETTING ASIDE AGENCY ACTION

**Blackburn, J.**

    This matter is before me on the plaintiff's appeal of an administrative action taken by the United States Forest Service. The action challenged is the Forest Service's revocation of the plaintiff's permits to operate a lodge and an outfitting/guide service. The matter is fully briefed, obviating the necessity for further argument. The administrative record contains numerous consecutively numbered pages, to which I will refer by their page number (e.g., AR 0001). I find and conclude that the Forest Service's revocation of the plaintiff's permits must be set aside.

### I. JURISDICTION

    The plaintiff challenges the action of a federal agency under the 5 U.S.C. § 558(c), part of the Administrative Procedures Act, and related regulations. I have jurisdiction over this case under 28 U.S.C. § 1331 and 5 U.S.C. §§ 702-706.

## II.  FACTS

The plaintiff operated an enterprise known as Trappers Lake Lodge and Resort on land regulated by the Forest Service.  Trappers operated the lodge under a twenty year term special use permit issued by the Forest Service (Lodge Permit).  Trappers' outfitter-guide activities operated under a special use commercial outfitter guide permit issued by the Forest Service (Guide Permit).  At the relevant times, Daniel Stogsdill was the president and chairman of the board of Trappers.

**2003 Notice** - On June 20, 2003, the Forest Service issued a Notice of Noncompliance to Trappers (2003 Notice).  AR 110 -112.  The 2003 Notice indicated that the Forest Service had concluded that Trappers was in violation of Clause 7 and Clause 42 of its Lodge Permit.  Clause 7 required Trappers to comply with the regulations of the Department of Agriculture, and all federal, state, county, and municipal laws.  *Id.* Clause 42 indicated that the sale of liquor was allowed under the permit.  *Id.*  However, the forest officer in charge could order the discontinuance of liquor sales if liquor sales caused the development of undesirable conditions.  Further, the clause prohibited the provision of liquor to a visibly intoxicated person, whether customer or employee.  The 2003 Notice also cited provisions of the Guide Permit, which the Forest Service found Trappers had violated.  *Id.*  These violations generally are not relevant to the issues in this case.  It should be noted, however, that possession of first aid cards by employees, and the availability of first aid kits in various circumstances, were among the issues raised concerning the Guide Permit.

The 2003 Notice indicated that Trappers must cure its noncompliance by July 21, 2003, by taking three steps:

> 1. Take any and all necessary steps to assure the immediate cessation of all illegal drug and excessive alcohol usage at the lodge by all lode and outfitting/guidng employees, and submit a written explanation of the steps you have taken.
>
> 2. In writing, explain how you plan to deter drug and excessive alcohol use by employees in the future.
>
> 3. In writing, submit your plan to assure first aid kits will be included with gear taken on all day trips as well as present in all camps.

*Id.* The 2003 Notice concluded with the following statement:

> Should there be any future recurrence of the above-described permit violations, action may be taken to immediately suspend or revoke both you Special Use Lodge Permit and your Special Use Outfitter/Guide Permit. Additionally, any further complaints and/or reports of illegal substance abuse or excessive alcohol use which could result in putting an employee, client or any other person in harms way, could result in immediate suspension of one or both of your special use permits (36 CFR 251.60(f)).

*Id.*

**Trappers' Response** - Three days later, on June 23, 2003, Trappers submitted a written response to the Forest Service. AR 113 -118. The response disputed some of the factual claims described in the 2003 Notice, and described how Trappers had addressed certain incidents described in the 2003 Notice, based on Trappers' understanding of the facts. In its response Trappers reviewed its policies concerning employee drug and alcohol use, possession of weapons, and possession and use of first aid kits, and its practices designed to enforce those policies. The Forest Service never replied, in writing or otherwise, to Trappers' June 23, 2003, written response.

**Suspension Notice** - On May 26, 2004, the Forest Service issued to Trappers a Notice of Immediate Suspension (Suspension Notice). AR 119. The Suspension Notice concerned both the Lodge Permit and the Guide Permit. Quoting 36 C.F.R.

3

§ 251.60(f), the notice indicated that "(i)mmediate suspension of a special use authorization, in whole or in part, may be required when the authorized officer deems it necessary to protect the public health or safety or the environment." *Id.* The Notice continued, "(m)y staff and law enforcement officials have informed me there is an immediate concern for environmental and public safety which warrants this decision." *Id.*

**2004 Notice** - On June 7, 2004, the Forest Service issued Trappers a Notice of Non-Compliance and Opportunity to Cure (2004 Notice). AR 120 - 124. The 2004 Notice addressed a variety of issues that the Forest Service had noted in a recent inspection. These issues concerned fuel storage and fuel spills, as well as the condition of various buildings used by the lodge. *Id.* In addition, the 2004 Notice described flaws in the water system and sanitation in the bar and restaurant. *Id.* The 2004 Notice did not address drug or alcohol use by Trappers' employees. The 2004 Notice provided that Trappers would have until August 15, 2004, to cure its non-compliance. AR - 120.

**Revocation Notice** - On June 15, 2004, the Forest Service issued a Notice of Revocation to Trappers (Revocation Notice). AR 160 - 163. The Revocation notice noted that Trappers was in violation of Clause 7 of its special use authorization, which requires compliance with Department of Agriculture regulations, and all federal, state, county and municipal laws ordinances, or regulations. The same clause was cited in the 2003 Notice. The Revocation Notice also cited Clause 39, which concerned the Trappers' inspection and removal of hazards, and protection of public safety, health, and welfare. Clause 39 was not cited in the 2003 Notice. The Revocation Notice also

cited specific terms of the lodge operating plan, which terms were not cited in the 2003 Notice.

The series of notices summarized above were outlined in the Notice of Revocation. The Notice of Revocation then states that "in addition to the June 7, 2004 Notice of Noncompliance and Opportunity to Cure, it has come to my attention that other violations with the terms and conditions of your special use authorization have taken place." AR 162. The notice then outlines the arrests of five Trappers employees which had occurred between April 25, 2004, and June 15, 2004, the date of the Notice of Revocation. The Notice of Revocation continued:

> The actions leading to these arrests may have resulted in putting innocent individuals, guests or children in harms way. Therefore, you have failed to comply with, or cure, the June 20, 2003, Notice of Noncompliance and Opportunity to Cure. Additionally, it is my determination that the above referenced situation places your operation in violation of Clauses 7, 39, and 48.
>
> Accordingly, pursuant to Clause 15 which states, "This permit may be revoked upon breach of any conditions herein," I hereby revoke both the special use authorization issued to (Trappers) dated May 9, 1990, for the purpose of operating and maintaining a resort and related facilities and the associated outfitter guide special use permit dated July 20, 2000.

AR 162 - 163. This was the first indication Trappers received from the Forest Service that its response to the 2003 Notice was not considered adequate to meet the cure requirement stated in the 2003 Notice.

**Appeal** - Trappers appealed the revocation to the Deputy Regional Forester, as allowed under applicable law. The Deputy Regional Forester upheld the revocation. The Deputy Regional Forester noted the 2003 Notice, and summarized alcohol and drug related "complaints and reports" involving Trappers' employees after the 2003

5

Notice and before the Notice of Revocation. Referring to these incidents, the Deputy Regional Forester concluded that these

> reports document continuation of unacceptable conduct by (Trappers) employees, for which the holder was given notice in June 2003. The submittal of a written plan to address the problem does not satisfy (Trappers') obligation to correct the problem. I affirm the Forest Supervisor's conclusion that the response to the notice of noncompliance (2003 Notice) was insufficient and therefore ground for revocation.

AR 304. The Deputy Regional Forester concluded also that continued alcohol and drug related complaints and reports after the Notice of Revocation evidenced an ongoing threat to public health and safety, which justified the Notice of Suspension that was issued before the Notice of Revocation. *Id.* The propriety of the Notice of Suspension is not at issue here.

### III. PROCEDURAL REQUIREMENTS

By statute and regulation, certain procedural requirements are applicable to the suspension and revocation of Trappers' permits. 5 U.S.C. § 558 (c) provides, in relevant part:

> Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given–
>
> (1) notice by the agency in writing of the facts or conduct which may warrant the action; and
>
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.

The Forest Service's termination, revocation, or suspension of special use permits is controlled by 36 C.F.R. § 251.60. This regulation gives the Forest Service broad authority to revoke or suspend a special use authorization "[f]or noncompliance

6

with applicable statutes, regulations or the terms or conditions of the authorization" or "[a]t the discretion of the authorized officer for specific and compelling reasons in the public interest."  36 C.F.R. § 251.60(a)(2)(i)(A), (D).  Subsections (e) and (f) of the regulation provide procedures for suspension and revocation:

> (e) Except when immediate suspension pursuant to paragraph (f) of this section is indicated, the authorized officer shall give the holder written notice of the grounds for suspension or revocation under paragraph (a) of this section and reasonable time to cure any noncompliance, prior to suspension or revocation pursuant to paragraph (a) of this section,
>
> (f) Immediate suspension of a special use authorization, in whole or in part, may be required when the authorized officer deems it necessary to protect the public health or safety or the environment. In any such case, within 48 hours of a request of the holder, the superior of the authorized officer shall arrange for an on-site review of the adverse conditions with the holder. Following this review, the superior officer shall take prompt action to affirm, modify, or cancel the suspension.

36 CFR § 251.60(e), (f).  Reading these subsections together, I conclude that revocation without proper notice and opportunity to cure is not permissible.

## IV.  DEVIATION FROM PROCEDURAL REQUIREMENTS

If an agency action is found to be "without observance of the procedure required by law," then the court must set aside the action as unlawful.  5 U.S.C. § 706(2)(D). Trappers argues that the Forest Service violated the procedural requirements of § 251.60(e) because the Forest Service revoked Trappers' permits without giving Trappers adequate notice and an opportunity to cure, as required by the regulation. The Forest Service claims it gave Trappers adequate notice and opportunity to cure before it revoked Trappers' permits.

The Forest Service argues that the 2003 Notice, concerning employee drug use and alcohol abuse, gave Trappers' ample notice of these problems, and ample

7

opportunity to cure the problems.  The Forest Service notes that as of May, 2004, there were continuing problems with Trappers' employees using drugs and abusing alcohol, which led to related problems.  According to the Forest Service, the continuing problems in 2004 demonstrate that Trappers' had not adequately cured the violations noticed in the 2003 Notice, and revocation thus was proper under the regulation.

Trappers says the life of the 2003 Notice cannot properly be extended to May 2004, as a basis for revoking Trappers' permits.  The 2003 Notice, Trappers notes, provided a cure deadline of July 21, 2003, and specific steps Trappers must take by that date. Trappers gave the Forest Service a written response before the cure deadline outlining the steps it had taken, and its plans and policies designed to address use of illegal drugs and alcohol abuse by its employees.  The Forest Service never replied to Trappers' written response, and never indicated to Trappers that it had not satisfactorily cured the violations noted in the 2003 Notice prior to the cure deadline of July 21, 2003.

The applicable statute and regulation do not define the lifetime of a notice and opportunity to cure.  The relevant cases do not provide such a definition either. However, it is clear that the concept of notice and an opportunity to cure is intended to give a permit holder "an opportunity for the correction of conduct questioned by the agency" before a permit is revoked.  ***Gallagher & Ascher Co. v. Simon***,  687 F.2d 1067, 1074 (7th Cir. 1982).  Stated differently, notice and an opportunity to cure is intended to prevent unreasonable or unfair surprise to a permit holder before its permit is revoked.

Under the circumstances of this case, I conclude that the effect of the 2003 Notice cannot properly be extended to May, 2004.  Trappers' June 23, 2003, written response to the 2003 Notice addressed each of the three steps outlined in the 2003 Notice.  The 2003 Notice indicates that those three steps were required to cure Trappers' noncompliance.  Absent some indication from the Forest Service that Trappers was required to do more than was described in Trappers' June 23, 2003, response, Trappers concluded reasonably that it had cured its noncompliance prior to the Forest Service's July 21, 2003, cure deadline.  Given this reasonable conclusion, the Forest Service could not rely on future violations of a similar type as a basis for immediate revocation of Trappers' permits.  Rather, the Forest Service was required to again comply with the minimally burdensome requirement of notifying Trappers of the nature of its violations, and giving Trappers at least a  short time to cure the violations.

If Trappers' cure was inadequate, or if the Forest Service chose to reserve judgment on the adequacy of Trappers' cure, the Forest Service was required to notify Trappers of these circumstances.  Under the notice and opportunity to cure scheme created by the relevant statute and regulation, the Forest Service cannot remain mute about a permit holder's facially reasonable cure, implying that the cure is adequate, and then effectively lay in wait for another similar violation as a basis for revocation without notice.  Such a procedure eviscerates the purpose of the statutory and regulatory scheme to provide a permit holder "an opportunity for the correction of conduct questioned by the agency" before a permit is revoked.  ***Gallagher & Ascher Co.***, 687 F.2d at 1074.  I have carefully considered the Forest Service's arguments to the contrary, and find them to be unavailing.

The Forest Service's June 15, 2004, Revocation Notice was based on the violations described in the 2003 Notice. Under the circumstances reflected in the record, Trappers concluded reasonably that those violations had been cured. Under applicable law, Trappers was entitled to another notice and an opportunity to cure prior to the revocation of its permits on June 15, 2004. Trappers was not given such notice and an opportunity to cure. The Revocation Notice, therefore, was issued without observance of the procedure required by law. Again, if an agency action is found to be "without observance of the procedure required by law," then the court must set aside the action as unlawful. 5 U.S.C. § 706(2)(D). The Forest Service's June 15, 2004, Revocation Notice must be set aside.

## V.  ATTORNEY FEES & COSTS

Trappers seeks an award of costs and attorney fees under 28 U.S.C. § 2412, and 5 U.S.C. § 504. I conclude that § 2412 controls these issues. Under § 2412(a)(1), I have discretion to award costs to a party who prevails in a civil action against the United States. I conclude that costs should be awarded to the plaintiff.

Under § 2412(d)(1)(a), a court shall award fees and other expenses, in addition to costs, incurred by the prevailing party in a case such as this case. Such an award is not mandated if "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id*. The plaintiff paints the Forest Service's position in this case as outrageous. I find that the Forest Service's position is reasonable, though in the end I disagree with that position. As noted above, the applicable statute and regulation, and the relevant case law, do not define the lifetime of a notice of noncompliance and opportunity to cure. In the face of this

10

uncertainty, the Forest Service can argue reasonably that the 2003 Notice remained effective and relevant at the time of the Revocation Notice. I conclude that attorney fees should not be awarded to the plaintiff.

## VI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That under 5 U.S.C. § 706(2), the June 15, 2004, Notice of Revocation issued by the Forest Service to Trappers (AR 160 - 163) is **SET ASIDE**;

2. That **JUDGMENT SHALL ENTER** in favor of the plaintiff, R.M. Investment Co., d/b/a Trappers Lake Lodge & Resort, and against the defendants, the United States Forest Service, and Don G. Carroll, in his official capacity as White River National Forest Supervisor;

3. That the plaintiff is **AWARDED** its costs under 28 U.S.C. § 2412(a)(1);

4. That costs **SHALL BE TAXED** by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

5. That the plaintiff's request for an award of attorney fees is **DENIED**.

Dated October 19, 2005, at Denver, Colorado.

                                                  BY THE COURT:

                                                  s/ Robert E. Blackburn
                                                  Robert E. Blackburn
                                                  United States District Judge

.